# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| SPECTRUM LIGHTING & CONTROLS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| SESCO LIGHTING, INC. and THE WATT STOPPER, INC., | ) ) ) |
| Defendants. | ) ) |

No. 2:18-cv-02253-TLP-cgc

JURY DEMAND

## ORDER DENYING DEFENDANT WATT STOPPER'S MOTION TO DISMISS

Arguing that Plaintiff failed to allege business relations with which Defendant supposedly interfered, defamatory statements, civil conspiracy, and any contracts Defendant breached, Defendant, The Watt Stopper, Inc. ("Watt Stopper"), moves to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 44.) For the reasons below, the Court finds that Plaintiff has sufficiently pleaded all of its claims. Defendant's Motion is DENIED.

## BACKGROUND

Plaintiff, Spectrum Lighting & Controls Inc. ("Spectrum"), sues in federal court under diversity jurisdiction, applying Tennessee law. (ECF No. 34 at PageID 183–84.) Spectrum alleges in its First Amended Complaint that various entities and individuals, both from within and outside the company, have conspired against it to steal its trade secrets, to form a competing enterprise, to put Spectrum out of business using anticompetitive tactics, and to

defame Spectrum to lure away its customers.  (ECF No. 34.)  In the end, the allegations against Watt Stopper are fairly straightforward.

Watt Stopper manufactures and sells lighting control products such as switches and dimmers.  (ECF No. 44 at PageID 348.)  Spectrum, as a representative for lighting and lighting control manufacturers, facilitated Watt Stopper's product sales to consumers in the Mid-South region.  (*Id*.)  Spectrum alleges the two parties had an "exclusive representation agreement."  (ECF No. 34 at PageID 186.)  Watt Stopper contracted with Defendant SESCO Lighting, Inc. ("SESCO"), one of Spectrum's "direct competitors," in all other regions within the United States.  (ECF No. 34 at PageID 185.)  Notably, SESCO did not yet have a presence in the Mid-South.  (*Id*.)

Spectrum alleges that Watt Stopper and SESCO tried to hire two of Spectrum's "key employees," because SESCO was preparing to enter the Mid-South market.  (ECF No. 34 at PageID 186.)  A Watt Stopper representative then informed one of those employees that SESCO would avoid entering the Mid-South for one year if that employee would agree to acquire Spectrum and sell it to SESCO.  (ECF No. 34 at PageID 187.)  Spectrum also alleges that Watt Stopper knew that both of these "key employees" "were subject to confidentiality and restrictive covenant agreements."  (*Id*.)  Sometime later, representatives from SESCO approached Spectrum's shareholders about buying the company, but the shareholders did not agree to sell.  (ECF No. 34 at PageID 187.)

Spectrum alleges that, as a result, Defendants conspired "to defame Spectrum and interfere in Spectrum's contractual and business relations" by telling third parties that Spectrum's president, Mr. Earps, was suffering from an illness that would force him to retire

and close the business and that SESCO was planning to acquire the company, regardless. (ECF No. 34 at PageID 188.)

Spectrum claims many customers called Spectrum's management asking if SESCO and Watt Stoppers' representations were true, which forced it to email nearly 700 customers to clarify its position. (ECF No. 34 at PageID 192.)

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint's allegations by arguing the allegations establish no claim for which relief can be granted. A court considering a motion to dismiss under Rule 12(b)(6) must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A court need not accept as true legal conclusions or unwarranted factual inferences. *Hananiya v. City of Memphis*, 252 F. Supp. 2d 607, 610 (W.D. Tenn. 2003) (citing *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998)). "A complaint should only be dismissed if it is clear to the court that 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).

According to Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In practice, Rule 8 requires that a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017).

A court will grant a motion to dismiss if a plaintiff has no plausible claim for relief. But a court must review the complaint in a light most favorable to the plaintiff. *See Herhold v. Green Tree Serv., LLC*, 608 F. App'x 328, 331 (6th Cir. 2015). "A complaint should only be dismissed if it is clear to the court that 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).

## **DISCUSSION**

I. **Spectrum Sufficiently Alleged that Watt Stopper Tortiously Interfered with its Business Relations and Intentionally Interfered with its Contracts**

   A. **Tortious Interference with Business Relations**

The Court analyzes this claim for tortious interference with business relations under Tennessee law. To establish tortious interference with business relations, a plaintiff must plead:

> (1) [a]n existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from the tortious interference.

*Trau-med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691 (Tenn. 2002).

Watt Stopper alleges that Spectrum failed to plead all but the first element. First, Watt Stopper asserts that Spectrum "impermissibly relies on generalized and conclusory statements regarding Watt Stopper's knowledge of Spectrum's prospective and existing business relationships," because the complaint does not state how Watt Stopper would know that a third party is a Spectrum customer. (ECF No. 44 at PageID 350.) Spectrum alleged in its complaint, though, that Watt Stopper and SESCO made calls upon third parties whom

4

they "knew were under contract with Spectrum . . . ." (ECF No. 34 at PageID 189.) What is more, Spectrum alleges that Watt Stopper "was exclusively contracted to Spectrum as a lighting controls products provider," and that one of its executives was in regular contact with Spectrum's "Contractor Sales and Controls Manager." (ECF No. 34 at PageID 185–86.) These allegations suggest that the Parties had a sufficiently intimate business relationship such that Watt Stopper would be aware of Spectrum's clientele. Discovery may reveal that Watt Stopper had no knowledge of Spectrum's client base, but for now, the Court accepts Spectrum's allegations as true.

Watt Stopper then asserts that Spectrum failed to satisfy the intent requirement, alleging only that it "intentionally and tortiously interfered with Spectrum's business relations." (ECF No. 44 at PageID 351.) By itself, that allegation may not be legally-sufficient. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). But one can infer from the complaint that Watt Stopper would not have contacted Spectrum's customers telling them, among other things, that SESCO was "buying Spectrum," unless it intended to interfere with Spectrum's relationship. (ECF No. 34 at PageID 190.)

Watt Stopper then cites *Trau-Med*, arguing that Spectrum has not sufficiently pleaded improper motive or means. (ECF No. 44 at PageID 352.) Yet Spectrum pleaded that Watt Stopper made many misrepresentations—an example listed in *Trau-Med* of an improper motive—about Spectrum's future. *Trau-Med*, 71 S.W.3d at 701 n.5. Last, Watt Stopper argues that Spectrum failed to allege damages sufficiently. (ECF No. 44 at PageID 353.) The Court is sympathetic to this point: the assertion that Spectrum "suffered damages and financial injury" could be described as generic or boilerplate. Even so, a plaintiff "need not

5

allege specific damages at the pleading stage to state a cause of action for tortious interference with business relations." *Assist-2-Sell, Inc. v. Assist-2-Build, LLC*, No. 1:05-CV-193, 2005 WL 3333276, at *7 (E.D. Tenn. Dec. 6, 2005) (courts can infer damage from defendant's alleged interference). At this stage of the case, Spectrum has adequately pleaded a claim for tortious interference with prospective business relations.

B. **Intentional Interference with Contract**

Spectrum asserts that Watt Stopper intentionally interfered with contracts it had with its employees, vendors, manufacturers, contractors, and customers. (ECF No. 34 at PageID 195.) Again, the Court analyzes this claim under Tennessee law. A tortious interference with contract claim requires that (1) there was a legal contract; (2) the wrongdoer must know about the existence of the contract; (3) there must be an intention to induce its breach; (4) the wrongdoer must have acted maliciously; (5) there must be a breach of the contract; (6) the act complained of must be the proximate cause of the breach of the contract; and (7) there must have been damages resulting from the breach of the contract. *Atchley v. RK Co.*, 224 F.3d 537, 540 (6th Cir. 2000) (applying Tennessee law).

For the interference against the customers, Watt Stopper claims that Plaintiff's allegations stating it "had contracts with many of its customers," and "Defendants had knowledge of these contracts" lack specificity. (ECF No. 34 at PageID 194.); (ECF No. 44 at PageID 353.) Perhaps, but "specificity" is not required. *See Iqbal*, 556 U.S. at 678. As noted above, Spectrum asserts that its working relationship with Watt Stopper was close and that Watt Stopper had a basis to know Spectrum's clientele. Discovery may later prove that Watt Stopper and SESCO had no knowledge of Spectrum's contracts, but for now, these allegations are sufficient to survive a motion to dismiss.

6

Watt Stopper next claims Spectrum failed to allege intent. As with the claim for tortious interference with business relations, though, the factfinder can infer intent from Watt Stopper's alleged actions. (*See* ECF No. 34 at PageID 190.)

Watt Stopper also argues that Spectrum failed to allege how Watt Stopper's actions proximately caused third parties to breach their contracts with Spectrum. (ECF No. 44 at PageID 355–56.) But Spectrum explicitly alleges that "[t]hree Spectrum employees did in fact resign, causing loss to Plaintiff's business," as a result of Watt Stopper's actions. (ECF No. 34 at PageID 195–96.)

As to Spectrum's employees, Watt Stopper asserts there is no allegation that it proximately caused those employees to breach their contracts. (ECF No. 44 at PageID 357.) Spectrum alleges though, that Watt Stopper's communications "that Spectrum would be closing its facility," led to "employees breach[ing] their contracts with Spectrum . . . ." (ECF No. 34 at PageID 195.) The Court finds, therefore, that Spectrum sufficiently pleaded a claim for intentional interference with contract.

## II. Spectrum has Sufficiently Pleaded its Claim for Defamation and Defamation by Implication

### A. Defamation

Spectrum alleges that some of Watt Stopper's communications to Spectrum's employees, customers, and other third parties were defamatory. (ECF No. 34 at PageID 196–97.) The alleged defamatory statements are that "[1] Spectrum is closing its facility, [2] being acquired by another company (SESCO) . . . [3] its owner(s) are sick, dying or retiring in 30 to 60 days, and [4] that it will be going out of business." (ECF No. 34 at PageID 197.)

Watt Stopper first argues these statements are not defamatory because they "did not constitute a serious threat to Spectrum's reputation . . . ." (ECF No. 44 at PageID 359).

7

"[T]he court must determine as a question of law whether . . . the statements 'must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule,' thereby comprising a serious threat to the plaintiff's reputation." *Stilts v. Globe Int'l, Inc.*, 950 F. Supp. 220, 223 (M.D. Tenn. 1995), *aff'd*, 91 F.3d 144 (6th Cir. 1996) (quoting *Stones River Motors, Inc. v. Mid-S. Pub. Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983)). That said, "[a] trial court may determine that, as a matter of law, a statement is not defamatory only when 'the statement is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense.'" *Aegis Scis. Corp. v. Zelenik*, No. M2012-00898-COA-R3CV, 2013 WL 175807, at *6 (Tenn. Ct. App. Jan. 16, 2013) (quoting *Biltcliffe v. Hailey's Harbor, Inc.*, No. M2003-02408-COA-R3CV, 2005 WL 2860164, at *4 (Tenn. Ct. App. Oct. 27, 2005)). At this point, the Court does not find that Watt Stopper's alleged statements "cannot be reasonably understood in any defamatory sense." *Id*.

Watt Stopper next argues that Spectrum has not pleaded the prima facie elements for defamation. To establish defamation in Tennessee, Spectrum must prove that "(1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). "[T]he falsity requirement is met only if the statement in question makes an assertion of fact—that is, an assertion that is capable of being proved objectively incorrect." *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 508 (6th Cir. 2015).

Watt Stopper alleges that the first three statements (that Spectrum was "closing its facility," "being acquired" by SESCO, and that Mr. Earps would be "retiring") are "prediction[s] of a future event, and therefore [are] not subject to being proved true or false."

8

(ECF No. 44 at PageID 360.) Other jurisdictions have, indeed, held that statements of future events are necessarily opinions. *See Cenveo Corp. v. CelumSolutions Software GMBH & Co KG*, 504 F. Supp. 2d 574 (D. Minn. 2007) ("the statement . . . is a statement about future events and therefore does not imply the existence of a fact"). The Court, though, is unaware of any such authority in Tennessee and Watt Stopper offers no case law to support its contentions. Whether Spectrum was, in fact, "closing its facility," "being acquired" by SESCO, and losing Mr. Earps, appears—at least facially—as "capable of being proved objectively incorrect." *Clark*, 617 F. App'x at 508. The Court, therefore, declines to dismiss Spectrum's defamation claim as to these statements.

As to the fourth statement, Watt Stopper relies on two cases for the proposition that saying a company is "going out of business" is an opinion. *See Medison Am., Inc.*, v. *Preferred Med. Sys., LLC*, 548 F. Supp. 2d 567 (W.D. Tenn. 2007), *aff'd*, 357 F. App'x 656 (6th Cir. 2009); *Cenveo Corp.*, 504 F. Supp. 2d at 574. This Court disagrees. *Medison* involved Lanham Act and defamation claims against a manufacturer who represented to a third party that plaintiff was "going out of business." 548 F. Supp. 2d 567 (W.D. Tenn. 2007), *aff'd*, 357 F. App'x 656 (6th Cir. 2009). The court granted summary judgment dismissing both claims because defendant had evidence showing plaintiff was in severe debt and had begun bankruptcy proceedings, countering plaintiff's assertion that the statements were false. *Medison Am., Inc.*, 548 F. Supp. 2d at 579. Unlike *Medison*, though, this matter is not here at the summary judgment stage and there is no evidence that Spectrum is, in fact, going out of business. Thus, Spectrum has stated enough to proceed on this fourth statement.

**B.    Defamation by Implication**

Spectrum alleges that when Watt Stopper told others "Mr. Earps had an illness that could kill him," "SESCO was buying Spectrum," "SESCO gets what it wants," and "SESCO

9

would be putting Spectrum out of business," those statements implied that Spectrum was going out of business. (ECF No. 44 at PageID 361.) Defamation by implication—also referred to as "innuendo"—occurs where statements that may be true on their face imply or suggest a defamatory meaning. *Grant v. Commercial Appeal*, No. W201500208COAR3CV, 2015 WL 5772524, at *12 (Tenn. Ct. App. Sept. 18, 2015). If the statement "qualifies as an opinion," then it cannot have a defamatory implication. *Id*. Watt Stopper argues—with no legal support—that these statements are opinions "not subject to being proved true or false." (ECF No. 44 at PageID 361.) As with Spectrum's defamation claim, though, these statements (that "Mr. Earps had an illness that could kill him," "SESCO was buying Spectrum," "SESCO gets what it wants," and "SESCO would be putting Spectrum out of business,") appear facially capable of being proved true or false. (ECF No. 44 at PageID 361.)

Watt Stopper also argues these statements are not actionable because they "do not constitute a serious threat to [Spectrum's] reputation." (*Id*.) Statements that "are not capable of conveying a defamatory meaning" are not actionable under the tort of defamation by implication. *Loftis v. Rayburn*, No. M201701502COAR3CV, 2018 WL 1895842, at *9 (Tenn. Ct. App. Apr. 20, 2018). Defamatory meaning is "injury to one's reputation for good character." *Davis v. The Tennessean*, 83 S.W.3d 125, 130 (Tenn. Ct. App. 2001). Once again, the Court is not yet willing to conclude that the alleged statements did not injure Spectrum's reputation for good character. The Court, therefore, declines to dismiss Spectrum's defamation by implication claim.

### III. Spectrum's Civil Conspiracy Claim is Well-Pleaded

Spectrum alleges that Watt Stopper and SESCO conspired to help SESCO enter the Mid-South lighting market and put Spectrum out of business. A claim for civil conspiracy requires "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *BancorpSouth Bank v. Herter*, 643 F. Supp. 2d 1041 (W.D. Tenn. 2009). Watt Stopper first argues that Spectrum's claim should be dismissed because the cause of action requires the existence "of an underlying predicate tort." *Nooh v. CIT Grp. Consumer Fin., Inc.*, No. 17-2833-JTF-DKV, 2018 WL 3056698, at *1 (W.D. Tenn. Apr. 5, 2018), *report and recommendation adopted*, No. 217CV02833JTFDKV, 2018 WL 2336294 (W.D. Tenn. May 23, 2018). Because this Court declines to dismiss many of Spectrum's other tort claims, Spectrum's cause of action does contain an alleged predicate tort. The Court will not dismiss this claim on that ground. (ECF No. 44 at PageID 363.)

Watt Stopper next asserts that Spectrum failed to satisfy the first two elements, citing *Hagen v. U-Haul Co. of Tennessee* for the proposition that plaintiffs must plead civil conspiracy claims, like fraud claims, with greater specificity. 613 F. Supp. 2d 986, 997 (W.D. Tenn. 2009). There has been some lingering confusion since the *Iqbal* decision over how the federal pleading standard should be applied to a civil conspiracy claim under Tennessee law. Our sister court recently "conclude[d] that there is no higher burden upon Plaintiff for pleading a civil conspiracy claim." *Carroll v. TDS Telecommunications Corp.*, No. 117CV01127STAEGB, 2017 WL 6757566, at *10 (W.D. Tenn. Dec. 29, 2017). To that end, Spectrum has pleaded sufficient facts alleging that Watt Stopper conspired with SESCO

11

to put Spectrum out of business by defaming its reputation in the community. (ECF No. 34 at PageID 199–200.)

## IV. Spectrum's Breach of Contract Claim Stands

Spectrum claims Watt Stopper breached the exclusive representation contract between the two parties. (ECF No. 34 at PageID 200–02.) The elements for a breach of contract claim are "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

Watt Stopper argues that Spectrum's claim is conclusory because Spectrum did not attach the alleged contract to its Complaint, cite any specific provisions of the contract, or quote any language from the contract that would suggest breach of contract. (ECF No. 44 at PageID 365–66.) While the Court acknowledges that Spectrum's allegations are somewhat thin, the Sixth Circuit has made clear that a party need not identify a specific contract because "that is not an element of a breach-of-contract claim in Tennessee." *Taylor v. JP Morgan Chase Bank*, N.A., No. 16-6513, 2017 U.S. App. LEXIS 24897. Rather, Spectrum has alleged that it had a contract with Watt Stopper. That contract allegedly made Spectrum the exclusive representative for Watt Stopper in the Mid-South lighting market. Watt Stopper allegedly breached that contract by helping SESCO enter the Mid-South lighting market. And Spectrum has suffered damages such as the resignation of several of its employees. (ECF No. 34 at PageID 200–02.) "Admittedly, if the factual record fails to narrow the specific contractual provisions allegedly breached, it is doubtful Plaintiff's breach of contract claim will survive a motion for summary judgment." *Bridgestone Am.'s, Inc. v.*

*Int'l Bus. Machines Corp.*, 172 F. Supp. 3d 1007, 1021–22 (M.D. Tenn. 2016). For now, though, Spectrum has sufficiently pleaded its claim to survive a motion to dismiss.

## **CONCLUSION**

For the reasons noted above, this Court finds that Plaintiff's Complaint contains "sufficient factual matter" to "state a claim to relief that is plausible on its face," for all claims asserted. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Engler*, 862 F.3d at 575. As a result, this Court DENIES Defendant's Motion to Dismiss.

**SO ORDERED**, this 9th day of November, 2018.

    s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE