# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| SPECTRUM LIGHTING & CONTROLS, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 2:18-cv-02253-TLP-cgc<br>)<br>) JURY DEMAND |
| SESCO LIGHTING, INC. and THE WATT STOPPER, INC., | )<br>)<br>) |
| Defendants. | ) |

## ORDER DENYING DEFENDANT SESCO'S MOTION TO DISMISS

Arguing that Plaintiff failed to allege business relations or contracts with which Defendant supposedly interfered, defamatory statements, and civil conspiracy, Defendant, SESCO Lighting, Inc. ("SESCO"), moves to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the Court finds that Plaintiff has sufficiently pleaded all of its claims. Defendant's Motion is DENIED.

## BACKGROUND

Plaintiff, Spectrum Lighting & Controls Inc. ("Spectrum"), sues in federal court under diversity jurisdiction, applying Tennessee law. (ECF No. 34 at PageID 183–84.) Spectrum alleges in its First Amended Complaint that various entities and individuals, both from within and outside the company, have conspired against it to steal its trade secrets, to form a competing enterprise, to put Spectrum out of business using anticompetitive tactics, and to defame Spectrum to lure away its customers. (ECF No. 34.) Despite the complexity of this case, though, the allegations against SESCO are fairly straightforward.

SESCO is one of the nation's largest lighting manufacturer representatives and is one of Spectrum's direct competitors. (ECF No. 34 at PageID 185.) This dispute centers on SESCO's attempt to enter the Mid-South region, which up until now, Spectrum has managed to dominate. (*Id*. at PageID 186.) Defendant The Watt Stopper, Inc. ("Watt Stopper") manufactures and sells lighting control products. (ECF No. 44 at PageID 348.) Spectrum, as a representative for lighting and lighting control manufacturers, facilitated Watt Stopper's product sales to consumers in the Mid-South region. (*Id*.) Spectrum alleges the two parties had an "exclusive representation agreement." (ECF No. 34 at PageID 186.) Watt Stopper contracted with SESCO in all other regions within the United States. (ECF No. 34 at PageID 185.)

Spectrum alleges that Watt Stopper and SESCO tried to hire two of Spectrum's "key employees," because SESCO was preparing to enter the Mid-South market. (ECF No. 34 at PageID 186.) A Watt Stopper representative then informed one of those employees that SESCO would avoid entering the Mid-South for one year if that employee would agree to acquire Spectrum and sell it to SESCO. (ECF No. 34 at PageID 187.) Spectrum also alleges that Watt Stopper knew that both of these "key employees" "were subject to confidentiality and restrictive covenant agreements." (*Id*.) Sometime later, representatives from SESCO approached Spectrum's shareholders about buying the company, but Spectrum rebuffed that effort. (ECF No. 34 at PageID 187.)

Spectrum alleges that Defendants then conspired "to defame Spectrum and interfere in Spectrum's contractual and business relations" by telling third parties that Spectrum's president, Mr. Earps, was suffering from an illness that would force him to retire and close

the business and that SESCO was planning to acquire the company, regardless. (ECF No. 34 at PageID 188.)

Spectrum claims many customers called Spectrum's management asking if SESCO and Watt Stoppers' representations were true, which forced it to email nearly 700 customers to clarify its position. (ECF No. 34 at PageID 192.)

## **STANDARD OF REVIEW**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint's allegations by arguing the allegations establish no claim for which relief can be granted. A court considering a motion to dismiss under Rule 12(b)(6) must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A court need not accept as true legal conclusions or unwarranted factual inferences. *Hananiya v. City of Memphis*, 252 F. Supp. 2d 607, 610 (W.D. Tenn. 2003) (citing *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998)). "A complaint should only be dismissed if it is clear to the court that 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).

According to Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In practice, Rule 8 requires that a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017).

A court will grant a motion to dismiss if a plaintiff has no plausible claim for relief. But a court must review the complaint in a light most favorable to the plaintiff. *See Herhold v. Green Tree Serv., LLC*, 608 F. App'x 328, 331 (6th Cir. 2015). "A complaint should only be dismissed if it is clear to the court that 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id*. (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).

## **DISCUSSION**

**I.    Spectrum Sufficiently Alleged that SESCO Tortiously Interfered with its Business Relations and Intentionally Interfered with its Contracts**

### **A.    Tortious Interference with Business Relations**

The Court analyzes this claim for tortious interference with business relations under Tennessee law. To establish tortious interference with business relations, a plaintiff must plead:

> (1) [a]n existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from the tortious interference.

*Trau-med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691 (Tenn. 2002).

SESCO first argues that Spectrum "continually references customers, manufacturers, suppliers, contractors, employees, and vendors . . . [that] can hardly be considered an identifiable class of third persons," for purposes of the first element. (ECF No. 43 at PageID 302.) Perhaps, but SESCO "does not dispute that Plaintiff had existing business relationships," which is enough to satisfy this element. (*Id*.)

SESCO then asserts that Spectrum failed to satisfy the intent requirement, stating that it believed that its statements, were, in fact, true. (ECF No. 43 at PageID 302.) Discovery may shed light on this. For now, though, we assume Spectrum's allegations are true. *See Iqbal* at 678. While Spectrum's allegations that SESCO "intentionally and tortiously interfered with Spectrum's business relations" are a bit thin, one can infer from the complaint that SESCO would not have communicated with Spectrum's customers unless it intended to interfere with Spectrum's relationship. (ECF No. 34 at PageID 190, 193.)

SESCO then cites a footnote in *Trau-Med*, arguing that Spectrum has not sufficiently pleaded improper motive or means because it did not sufficiently allege "predominant purpose." (ECF No. 43 at PageID 303); *Trau-Med*, 71 S.W.3d at 701 n.5. Yet Spectrum alleged that SESCO made many misrepresentations—an example listed in *Trau-Med* of improper interference—about Spectrum's future. (ECF No. 34 at PageID 195–96); *Trau-Med*, 71 S.W.3d at 701 n.5. And one can infer that SESCO would not have misrepresented Spectrum's future to third parties without mainly hoping to interfere with those contracts.

Last, SESCO argues that Spectrum fails to allege damages sufficiently because Spectrum does not specify which "business opportunities" suffered as a result of the alleged interference. (ECF No. 43 at PageID 302.) Yet a plaintiff "need not allege specific damages at the pleading stage to state a cause of action for tortious interference with business relations." *Assist-2-Sell, Inc. v. Assist-2-Build, LLC*, No. 1:05-CV-193, 2005 WL 3333276, at *7 (E.D. Tenn. Dec. 6, 2005) (Court could infer damage from defendant's alleged interference). Spectrum also pleaded that SESCO's conducted caused three Spectrum employees to resign. (ECF No. 34 at PageID 194.) It follows, then, that Spectrum has adequately pleaded a claim for tortious interference with prospective business relations.

5

## B. Intentional Interference with Contract

Spectrum asserts that SESCO intentionally interfered with contracts it had with its employees, vendors, manufacturers, contractors, and customers. (ECF No. 34 at PageID 195.) Again, the Court analyzes this claim under Tennessee law. A tortious interference with contract claim requires that (1) there was a legal contract; (2) the wrongdoer must know about the existence of the contract; (3) there must be an intention to induce its breach; (4) the wrongdoer must have acted maliciously; (5) there must be a breach of the contract; (6) the act complained of must be the proximate cause of the breach of the contract; and (7) there must have been damages resulting from the breach of the contract. *Atchley v. RK Co.*, 224 F.3d 537, 540 (6th Cir. 2000) (applying Tennessee law).

SESCO first argues that Spectrum failed to identify any legal contract or accompanying breach. (ECF No. 43 at PageID 306.) But Spectrum explicitly alleges, for instance, that SESCO interfered with its "contract with Defendant Watt Stopper," which Watt Stopper later breached. (ECF No. 34 at PageID 195.) As to the intent element, "SESCO's argument remains the same [as tortious interference with business relations] . . . SESCO had no intent to breach any potential contracts, but simply made statements that it believed to be true . . . ." (ECF No. 43 at PageID 306.) Once again, while discovery may prove this point, the Court assumes, for purposes of a motion to dismiss, that Spectrum's allegations are true. *See Iqbal* at 678.

SESCO next argues that Spectrum's allegations that "'Defendants' actions were malicious and were a proximate cause of the various breaches of contract' . . . parrot[s] the language of these elements." (ECF No. 43 at PageID 306–07); (ECF No. 34 at PageID 196.) The Court acknowledges that these allegations, by themselves, appear to be generic. But one

can infer that SESCO caused three Spectrum employees to breach their contracts with Spectrum when it allegedly communicated that Spectrum "would be going out of business," and that such communications are inherently malicious. (ECF No. 34 at PageID 195.)

Last, SESCO argues that Spectrum "failed to properly allege that it suffered any damages at all." (ECF No. 43 at PageID 307.) That said, Spectrum alleges that "[t]hree Spectrum employees did in fact resign, causing loss to Plaintiff's business." While this is a close question, the Court finds that Spectrum has asserted enough to survive a motion to dismiss. The Court declines thus to dismiss this claim.

## II. Spectrum has Sufficiently Pleaded its Claim for Defamation and Defamation by Implication

### A. Defamation

Spectrum alleges that some of SESCO's communications to Spectrum's employees, customers, and other third parties were defamatory. (ECF No. 34 at PageID 196–97.) The alleged defamatory statements are that "[1] Spectrum is closing its facility, [2] being acquired by another company (SESCO) . . . [3] its owner(s) are sick, dying or retiring in 30 to 60 days, and [4] that it will be going out of business." (ECF No. 34 at PageID 197.)

SESCO first contends these statements are not defamatory. (ECF No. 43 at PageID 291.) "A trial court may determine that, as a matter of law, a statement is not defamatory only when 'the statement is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense.'" *Aegis Scis. Corp. v. Zelenik*, No. M2012-00898-COA-R3CV, 2013 WL 175807, at *6 (Tenn. Ct. App. Jan. 16, 2013) (quoting *Biltcliffe v. Hailey's Harbor, Inc.*, No. M2003-02408-COA-R3CV, 2005 WL 2860164, at *4 (Tenn. Ct. App. Oct. 27, 2005)). SESCO cites *TIG Ins. Co. & Fairmont Specialty Grp. v. Titan Underwriting Managers, LLC*, when the court dismissed counter-plaintiff's defamation

7

claims because none of the claims could "be reasonably construed to disgrace or injure [counter-plaintiff's] reputation in the community . . . ." No. M200701977COAR3CV, 2008 WL 4853081, at *6 (Tenn. Ct. App. Nov. 7, 2008). Plaintiff does not explain, nor does the Court understand, how the facts in that case relate to those here. There, the counter-plaintiff alleged that the counter-defendant gave the counter-plaintiff's business contacts information that would lead them to "infer that a restraining order against [counter-plaintiff] ha[d] been issued . . . ." *Id.* Here, though, Spectrum does not allege that SESCO mischaracterized the status of Spectrum's business so that its customers would 'infer' that it was going out of business: Spectrum alleges that SESCO flatly told the customers, among other things, that it was going out of business. (ECF No. 34 at PageID 197.) For that reason, the Court is not prepared to find that SESCO's alleged statements "cannot be reasonably understood in any defamatory sense." *Id.*

SESCO next argues that Spectrum has not pleaded the prima facie element of intent. (ECF No. 43 at PageID 292.) To establish defamation in Tennessee, Spectrum must prove that "(1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). "[T]he falsity requirement is met only if the statement in question makes an assertion of fact—that is, an assertion that is capable of being proved objectively incorrect." *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 508 (6th Cir. 2015). SESCO's argument here is two-fold. First, SESCO argues at length the reasons why it was "under the impression that [the statements] were true." (ECF No. 43 at PageID 292–96.) Further discovery may corroborate SESCO's claims, but for now the Court assumes

8

Spectrum's allegations to be true. *See Iqbal* at 678. Second, SESCO argues that Spectrum's allegation, that SESCO "knew or should have known the statements were false," is conclusory. (ECF No. 43 at PageID 297.) But "actual intent can only be discerned through discovery." *Allen v. Quest Diagnostics, Inc.*, No. 3:17-CV-00897, 2017 WL 3034697, at *5 (M.D. Tenn. July 17, 2017). And Spectrum has pleaded enough separate facts, such as the allegation that SESCO engaged in a "smear campaign" against it, to make intent to defame plausible. (ECF No. 34 at PageID 196.)

Last, SESCO claims that Spectrum has not pleaded "objective damages to its reputation." (ECF No. 43 at PageID 297.) Not so. Spectrum explicitly states that the alleged defamatory statements caused it to lose "employees and business opportunities." (ECF No. 34 at PageID 192.)

### B. Defamation by Implication

Spectrum alleges that when SESCO told others "Mr. Earps had an illness that could kill him," "SESCO was buying Spectrum," "SESCO gets what it wants," and "SESCO would be putting Spectrum out of business," those statements implied that Spectrum was going out of business. (ECF No. 44 at PageID 361.) Defamation by implication—also referred to as "innuendo"—occurs where statements that may be true on their face imply or suggest a defamatory meaning. *Grant v. Commercial Appeal*, No. W201500208COAR3CV, 2015 WL 5772524, at *12 (Tenn. Ct. App. Sept. 18, 2015). If the statement "qualifies as an opinion," then it cannot have a defamatory implication. *Id.*

SESCO argues the claim should be dismissed "for the same reasons addressed in SESCO's response to" Spectrum's defamation claim. That "the statements, on their own, are not defamatory in nature . . . SESCO did not have the requisite intent to defame Plaintiff . . . [and] Plaintiff failed to show, objectively, that its reputation was damaged by these

9

statements." (ECF No. 43 at PageID 300–01.)  The Court declines to dismiss this claim, then, for the exact reasons outlined in *supra* Part II.A.

**III.  Spectrum's Civil Conspiracy Claim is Sufficiently Well-Pleaded**

Spectrum alleges that Watt Stopper and SESCO conspired to help SESCO enter the Mid-South lighting market and put Spectrum out of business.  A claim for civil conspiracy requires "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury."  *BancorpSouth Bank v. Herter*, 643 F. Supp. 2d 1041 (W.D. Tenn. 2009).  SESCO argues that Spectrum's claim should be dismissed because the cause of action requires the existence of an underlying predicate tort. *See Nooh v. CIT Grp. Consumer Fin., Inc.*, No. 17-2833-JTF-DKV, 2018 WL 3056698, at *1 (W.D. Tenn. Apr. 5, 2018), *report and recommendation adopted*, No. 217CV02833JTFDKV, 2018 WL 2336294 (W.D. Tenn. May 23, 2018).  Because this Court declines to dismiss Spectrum's other tort claims, it will not dismiss this claim on that ground.  (ECF No. 44 at PageID 363.)

SESCO then asserts that Spectrum has not alleged the second element because SESCO "had no unlawful purpose nor did it use unlawful means when it met with Plaintiff's employees, former employees, vendors, customers, contractors, manufacturers, and others." (ECF No. 43 at PageID 307.)  SESCO likewise argues that Spectrum has not alleged the third element because it "suffered no injury." (*Id.*)  Once again, these are factual arguments that SESCO is free to make at a later stage of litigation.  For now, the Court must accept as true Spectrum's claims that Spectrum "suffered financial injury" and SESCO and Watt Stopper met with the "purpose of promoting or facilitating the commission of torts against Spectrum .

10

. . ." (ECF No. 34 at PageID 199–200); *See Iqbal* at 678.  Plaintiff has thus stated enough facts to withstand dismissal.

## **CONCLUSION**

For the reasons noted above, this Court finds that Plaintiff's Complaint contains "sufficient factual matter" to "state a claim to relief that is plausible on its face," for all claims asserted.  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Engler*, 862 F.3d at 575.  As a result, this Court DENIES Defendant's Motion to Dismiss.

**SO ORDERED**, this 9th day of November, 2018.

   s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE